## MOORE v. MOORE. (1)

---

APPEAL AND ERROR; WILLS; EVIDENCE; TESTAMENTARY CAPACITY; UNDUE INFLUENCE; DIRECTION OF VERDICT.

1. An assignment of error will not be sustained when based upon a ruling

---

NOTE.—For a discussion of the question as to what constitutes capacity or incapacity to make a will, see notes in 27 L.R.A.(N.S.) 2, and L.R.A. 1915A, 444.

of the trial court in a will contest sustaining an objection by the caveatee to a question propounded a witness by the caveator as to whether the witness would have been willing to enter a contract with the decedent, especially where the record shows the witness answered, "Well, I don't know," and there was no motion to strike out the answer, and the witness had previously stated that, in his opinion, the decedent was of sound mind.   (Following *Turner* v. *American Secur. & T. Co.* 29 App. D. C. 460.)

2. In a will contest, the trial court properly strikes out the answer of a witness that he "would not want to make a contract with her," the decedent, especially where the answer is not responsive to the question propounded.

3. In a will contest where the jury is required to answer specific questions submitted to them, among which is none relating to the validity or invalidity of the will, it is not error for the trial court to refuse to receive the testimony of a witness for the caveator to the effect that one of the beneficiaries had said after the death of the decedent that the will in question "was easily broken."

4. Where the witnesses of an instrument propounded as a will testify that the decedent signed it in their presence, and they, at her request, signed it as witnesses in her presence and in the presence of each other, the proof of its execution and attestation is sufficient.

5. In a will contest involving the question of the testamentary capacity of the decedent, the trial court properly directs a verdict for the caveatee on that issue, where the testimony in effect is that the decedent was ill for three months before she executed in July the instrument propounded as her will, attended all of the time by a physician, who sometimes would come more than once a day, and the latter part of the time by a trained nurse; that during the whole summer "she was bad off;" that on the day the will was executed a sister called but did not see her; that the decedent was friendly with all her relations; that she told one sister in June or July she was not going to make a will, and another, after she had executed the instrument, that she had made her will; that nine months after its execution she asked one of her sisters to call upon their brother, the caveatee, to show her the will; that another sister, but not a beneficiary, who had lived with te decedent fourteen years inclusive of the time the will was made and afterwards, testified that nine months after it was made the decedent was able to get up and down stairs unattended, and, in her opinion, the decedent was of sound mind when the will was made.

6. The question of the exercise of undue influence upon the decedent by a brother and a sister is properly withdrawn by the trial court from the jury in a will contest, where the evidence on that subject in effect is, that seven days after the paper was executed the decedent

delivered her check for several thousand dollars to her brother as her attorney; that he had been attending to her business for many years; that the decedent had stated she had loaned money to her brother, and that he would pay it back out of the rent; that he was seen handing her a check to sign and receiving checks from her; that he frequently visited the office of the attorney who drew the will; that the attorney and another whom he had asked to witness the will had stopped at the office of the brother on their way to have the will executed; and that one of decedent's sisters who was present when the will was executed, but who was not a beneficiary, failed to testify that any undue influence was exercised upon the decedent.

No. 3096. Submitted October 2, 1917. Decided November 12, 1917.

HEARING on an appeal by the caveator from an order of the Supreme Court of the District of Columbia, sitting as a probate court, admitting a will to probate after a contest over its validity.          *Affirmed.*

The COURT in the opinion stated the facts as follows:

Sarah E. Moore died leaving what purports to be her will. George Moore, one of the heirs at law and next of kin of the decedent, filed a caveat against the will. Three questions were formed for submission to a jury. They were in substance: (a) Was the paper purporting to be decedent's will properly executed and attested? (b) Was the decedent mentally capable of making a will at the time the paper in question was executed? And (c) Was that paper procured by the undue influence of any person?

The jury, by direction of the court, answered the first two questions in the affirmative, and the last question in the negative. From the judgment admitting the will to probate the caveator, George W. Moore, appeals and assigns seven errors.

*Mr. G. S. Gertman* and *Mr. John Ridout* for the appellant.

*Mr. W. C. Balderston, Mr. A. L. Sinclair,* and *Mr. David E. Anthony* for the appellee.

Mr. Chief Justice Smyth delivered the opinion of the Court:

The first we shall notice is the claim that the court erred in sustaining an objection to a question put to the witness Moore, as to whether she would be willing to enter into a contract with the decedent. She answered, "Well, I don't know." No motion was made to strike out the answer. The court expressed the opinion that the question was objectionable, and said, "I will sustain the objection." But the answer was permitted to remain. Anyhow the question was improper. It was put on the theory, the appellant says, that he wanted to test the witness's opinion; she having said in answer to a question by the court, that in her opinion the decedent was of sound mind at the time she executed the will in question. In other words he desired to cross-examine his own witness, for he had called her. This was not proper, and the court was right in its action, even though we assume that the answer was stricken out. (*Turner* v. *American Secur. & T. Co.* 29 D. C. 460.) Besides, the fact that a person might be unwilling to enter into a contract with another does not tend in any way to prove that the latter is of unsound mind. There may be, as the court below observed, many reasons besides that of mental incapacity for doing so. This also disposes of the objection to the ruling of the court in striking out the answer of the witness Donohoe that he "would not want to make a contract with her," the decedent. Moreover his answer was not responsive to the question propounded, and should have gone out for that reason as well.

Complaint is made because the court refused to receive the testimony of the witness Ridgeway, given by deposition, that John A. Moore, one of the devisees, had said after the death of decedent that the will in question "was easily broken." It does not appear upon what he based this opinion. The jury was not charged with the duty of finding whether the will was valid or invalid. Its authority was limited to answering certain specific questions among which the validity of the will was not one; that was a matter for the court, not for the jury. Therefore, if for no other reason, the opinion of Moore could not have aided the jury and hence was properly excluded.

The next question presented for our consideration was whether the purported will was executed and attested as required by law. Appellant in his brief fails to indicate wherein there is any defect in this respect. The certificate is in proper form. Both witnesses to the will testified that the decedent signed it in their presence, and they at her request signed it as witnesses in her presence and in the presence of each other. We think this is sufficient.

Was there any evidence tending to show that the decedent was not of sound mind on the 7th of July, 1915, the date on which she made the purported will? She was sick in April, May, and June. A trained nurse was procured for her a short time before the will was made, and a physician attended her for about three months. Sometimes he would come more than once a day. During a whole summer "she was bad off," according to one witness. On the day the will was signed a sister of the decedent called but did not see her. Just why is not disclosed. The decedent was friendly with all her relations. She told her sister Mrs. Ridgeway, more than once in June or July of 1915, that she was not going to make a will. Some three weeks after the will was made she said to her sister Mrs. Larrick, that she had made her will. In April, 1916, about nine months after this, she asked the same sister to call upon their brother, the appellee, and request him to show her decedent's will. Elizabeth A. Moore, another sister, but not one of the beneficiaries, who had lived with the decedent for fourteen years, inclusive of the time the will was made and afterwards, testified that in October, 1915, three months after the will was made, decedent was able to get up and down stairs unattended, and further said, in answer to a question of the court, that in her judgment decedent was of sound mind at the time the will was made. This is substantially all of the testimony on the subject of mental incapacity. It does not disclose anything by which the jury would have been warranted in finding that the decedent lacked mental capacity to make a will.

Appellant says that, so far as the testimony discloses, the testatrix knew nothing of the contents of the will. What we have already shown makes clear that we cannot assent to this.

Finally it is urged that the purported will is the result of undue influence practised by John A. Moore, appellee, and his sister, Melita C. Spellhouse, or by one of them or by some other person. The evidence which the appellant claims should have been submitted to the jury upon this question may be summarized thus: Seven days after the will was executed, the decedent delivered to "John A. Moore, Attorney," the appellee, a check for $3,155.34. He had been attending to her business for many years. Mrs. Ridgeway testified that the decedent had told her that she had loaned money to the appellee, but that he would pay it back out of the rent. He was seen handing to the decedent a check to sign and receiving checks from her. Frequently he visited the office of Mr. Balderston, the attorney who drew the will. Miss Heltman was asked by Mr. Balderston to witness the will, and she consented. As she and Mr. Balderston were on their way to the house of the decedent, they stopped at the place of business of John A. Moore, but she did not hear the conversation between Moore and Balderston. In the room at the time decedent signed the will were Miss Heltman, Mr. Saunders, and Elizabeth A. Moore, the sister of the decedent, who received nothing under the will. The latter had, therefore, every opportunity to observe whether or not improper influence was exercised upon her sister, at the time the will was signed, but she failed to testify that there was. We entirely agree with the learned trial judge that this evidence does not disclose even a suspicion of wrongdoing.

Upon all questions presented by the record, the judgment of the lower court is correct, and is affirmed.          *Affirmed.*